**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5102-14T2

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

STOKES PHARMACY,

       Defendant-Appellant/
       Cross-Respondent.

_____

Argued January 24, 2017 – Decided October 13, 2017

Before Judges Messano and Guadagno.

On appeal from the Superior Court of New
Jersey, Law Division, Burlington County,
Docket No. L-0097-14.

Michael Confusione argued the cause for
appellant/cross-respondent (Hegge &
Confusione, LLC, attorneys; Mr. Confusione,
of counsel and on the briefs).

Ann Dee Lieberman argued the cause for
respondent/cross-appellant (Newman &
Andriuzzi, attorneys; Ms. Lieberman and
Suzanne E. Mayer, on the briefs).

PER CURIAM

On December 18, 1990, Joseph Brian Quick sustained serious injuries when he was struck by a car while riding his bicycle. State Farm Mutual Automobile Insurance Company provided automobile insurance to Joseph under a policy issued to his father, Robert C. Quick.

Defendant Stokes Pharmacy provided medical services including medication and durable medical equipment to Joseph which were billed to and paid for by State Farm. In November 2012, State Farm claimed it overpaid Stokes $165,465.20, for services billed between April 5, 2012, and July 31, 2012. State Farm demanded reimbursement but Stokes refused.

State Farm filed a complaint in the Law Division seeking reimbursement. After a three-day bench trial, the trial judge entered an order awarding State Farm $134,934.62. Stokes now appeals, claiming it was denied a trial by jury; the evidence failed to demonstrate State Farm's right to recovery; State Farm's right to recovery was foreclosed by N.J.S.A. 26:2J-8.1 and N.J.S.A. 39:6A-9.1; and the trial judge erred in admitting certain testimony and evidence. State Farm cross-appeals and maintains the judge erred in not awarding the full amount sought, $165,465.20.

Stokes first claims that it was denied the right to a trial by jury. Without actually conceding that it never made a demand for a jury trial, Stokes attempts to piggyback on the demand for a jury trial made by State Farm in its complaint. We find this argument not only lacks merit but is somewhat disingenuous.

Rule 4:35-1(a) provides in pertinent part,

> any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing not later than 10 days after the service of the last pleading directed to such issue. Such demand may be appended to the party's pleading.

Failure of a party to serve a demand for trial by jury constitutes a waiver. R. 4:35-1(c).

Stokes relies on 500 Columbia Turnpike Associates v. Haselmann, 275 N.J. Super. 166 (1994), in arguing that once a jury trial demand has been made by one party the consent of all parties is required before it can be dispensed with. We find Columbia Turnpike distinguishable and Stokes' reliance on it misplaced.

In Columbia Turnpike, the plaintiff instituted litigation against three defendants alleging tortious interference and breach of a commercial lease. Id. at 169. One of the defendants, Feist & Feist, requested a trial by jury. After a jury was empaneled, counsel for another defendant, Haselmann,

requested a bench trial on the claims against his client and that a jury trial be conducted as to Feist & Feist. Ibid. When the judge ruled that all issues would be tried before a jury, counsel for Feist & Feist waived trial by jury for his client. Ibid. The plaintiff's counsel objected, arguing that Rule 4:35-1(d) required the consent of all parties to a waiver once a party has requested a trial by jury. The judge ruled that because plaintiff had not requested a jury trial, it had no right to demand a jury its waiver was not required under the rule. Ibid.

We reversed, noting that once a party requests a jury trial the Rule requires all parties to consent by trial by the court and "once Feist & Feist demanded a jury trial on all the issues, trial by jury could be dispensed with only by consent of all the parties or their counsel." Id. at 170.

While it is clear that State Farm demanded a jury trial in its complaint, it is equally clear that Stokes made no request for a jury trial in either its initial or in an amended answer. In the limited record before us, there is no indication it ever made such a demand before the trial judge or objected to a bench trial.

In a Rule 104 hearing held on March 31, 2015, the trial judge indicated that he has "engaged in some conferencing with

4

counsel not for the purpose of settlement, but for the purpose of . . . exploring presentation and seeing what the issues happen to be."  We were not provided with transcripts of those conferences, but it is apparent that by the time of the March 31, 2015 hearing, the parties were anticipating a bench trial.[1] This is evident from a statement made that day by the trial judge after he denied State Farm's request to adjourn the trial date: "it is a non-jury trial, and I will see that justice is done."  Certainly, if Stokes was under the impression that the case would be tried to a jury, or had any objection to a bench trial, its counsel had the opportunity to raise the issue with the trial judge at that time and failed to do so.  Stokes has not provided any proof that it ever requested a trial by jury or objected the bench trial.

In State Farm's brief, it alleges that during a pretrial conference[2] before the trial judge, "both parties agreed that the matter should proceed as a bench trial not a trial by jury."  No transcript of this conference has been provided, but if this

---

[1] Later in the transcript, the attorney for Stokes stated that he had spoken earlier with the judge in chambers "regarding how the trial will be handled by [the attorney] and [his co-counsel]."

[2] Court records indicate that, before trial began on April 28, 2015, there were motion hearings scheduled on July 25, 2014, October 10, 2014, October 24, 2014, March 31, 2015, and March 30, 2015.

A-5102-14T2

occurred, there was an oral waiver of the right to trial by jury which is permissible by <u>Rule</u> 4:35-1(d). If there was a jury trial waiver, it is troubling that appellate counsel, who does not deny State Farm's claim of such a waiver, argues before us that Stokes was entitled to a jury trial. We acknowledge that appellate counsel did not represent Stokes at trial and no transcripts of pretrial conferences have been produced. Nevertheless we caution counsel that misrepresentation, "even when carried out in the name of zealous representation," is not permissible. <u>In re Seelig</u>, 180 <u>N.J.</u> 234, 250 (2004).

Because State Farm's claim that both parties waived the right to trial by jury is not contested by Stokes and there is ample support in the record indicating Stokes consented to a bench trial, we reject the argument that Stokes was denied the right to trial by jury.

Stokes next claims State Farm's complaint failed to specify the cause of action under which it sought recovery from Stokes. In its complaint, State Farm alleged:

> For dates of service from April 5, 2012 through July 12, 2012, agents, servants and employees of Defendant Stokes Pharmacy, provided medical services in the form of medication to Joseph Brian Quick. These services were erroneously and/or over-billed and/or duplicatively billed to State Farm Mutual Automobile Insurance Company. As a result of these erroneously billed and/or

over-billed and/or duplicatively billed dates of service, State Farm Mutual Automobile Insurance Company thereafter over paid Stokes Pharmacy, the sum of $165,492.94 for these services.

In its answer, Stokes denied the allegations, but failed to raise any defenses. During the March 31, 2015 hearing, the judge permitted Stokes to amend its answer to raise the defense of accord and satisfaction. Stokes now argues that the judge failed to apply the legal requirements for unjust enrichment to State Farm's claim. State Farm did not seek restitution for a payment made under a mistake of fact, but sought to recoup overpayments as a result of Stokes' overbilling. Stokes only sought to include accord and satisfaction in its amended answer and did not raise the issue of unjust enrichment before the trial judge.

It is well-settled that we will not consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We decline to consider the issue now.

A-5102-14T2

Stokes also claims the trial judge's finding that more than $130,000 in overpayments were made to Stokes is not supported by adequate, substantial and credible evidence. We disagree.

State Farm called Diane Zazzaro at the <u>Rule</u> 104 hearing and as a witness at trial. Zazzaro identified each claim submitted by Stokes and the corresponding payments made by State Farm. There were no objections to any of these exhibits by Stokes. While Stokes attempted to prove through its co-owner/manager, Michael Tursi, that the payments received from State Farm on behalf of James Quick were applied to outstanding balances, Tursi was unable to provide any documents to support his claim or to rebut State Farm's proofs of overpayment. The evidence introduced by State Farm provided compelling support for the judge's conclusions.

Stokes next argues that State Farm's right to sue Stokes for overpayments is foreclosed by the Health Claims Authorization, Processing and Payment Act (HCAPPA), <u>N.J.S.A.</u> 26:2J-1 to -47 and the New Jersey Automobile Reparation Reform Act (No Fault Law), <u>N.J.S.A.</u> 39:6A-1 to -35. Again, we disagree.

HCAPPA provides certain adjudicative or administrative procedures by which health maintenance organizations should resolve claims for unpaid or improperly paid claims. Stokes now

argues HCAPPA requires a carrier to file a claim for overpayment within eighteen months of payment. That section, N.J.S.A. 26:2J-8.1(d)(12), provides in pertinent part:

> No health care provider shall seek reimbursement from a payer or covered person for underpayment of a claim submitted pursuant to this section later than 18 months from the date the first payment on the claim was made, except if the claim is the subject of an appeal submitted pursuant to subsection e. of this section or the claim is subject to continual claims submission.

Stokes claims State Farm's complaint was filed more than eighteen months after the "prescription period" and a remand is required to determine if these were payments of PIP benefits or health insurance benefits subject to HCAPPA.

State Farm maintains that it has paid and continues to pay PIP benefits to Brian Quick, which are not subject to the restrictions contained in N.J.S.A. 26:2J-8.1(d)(12) and N.J.S.A. 17B:27-44.2. Stokes suggests that the payments to Quick may not be PIP benefits but provides no proof to support this claim. Rather, Stokes, who did not raise this issue before the trial judge, now seeks a remand for that determination to be made. As there is no indication in the record that these payments were anything other than PIP benefits, we find no merit to Stokes' argument and see no need for a remand.

Stokes next argues for the first time on appeal, that nothing in N.J.S.A. 39:6A-9.1, permits State Farm to sue a "health provider like Stokes." State Farm did not rely on this statute in seeking recovery from Stokes and Stokes failed to raise this argument before the trial judge. We see no relevance of N.J.S.A. 39:6A-9.1, which addresses the ability of an insurer paying PIP benefits to recover from insured and uninsured tortfeasors, to the action brought by State Farm and no merit to Stokes' argument. R. 2:11-3(e)(1)(E).

Finally, Stokes challenges evidentiary rulings made by the trial judge permitting State Farm to call a witness, Carla Salmonson, who was not identified during discovery, and admitting a spread sheet prepared by Salmonson under the supervision of State Farm's counsel.

Just before trial began, State Farm moved to bar any testimony regarding outstanding balances claimed by Stokes because no affirmative defense was ever raised in its answer. Counsel for Stokes explained its proposed defense:

> Your Honor my client's position in this matter is basically they got the monies from State Farm, applied it to the open accounts receivable, and at this point in time there's no other monies due to State Farm.

The judge then permitted Stokes to amend its complaint to allege "full accord and satisfaction" and denied a request by

10

counsel for State Farm to adjourn the trial. During the <u>Rule</u> 104 hearing prior to trial, Tursi testified that during 2012, State Farm provided "partial payments" to Stokes and subsequent payments received from State Farm were applied to outstanding balances. Tursi relied in part on a spread sheet listing $434,833.08 in payments made by State Farm to Stokes from November 7, 2011 to September 28, 2012, well beyond the time frame of claimed overpayments alleged in State Farm's complaint. State Farm objected to the introduction of the spread sheet at trial. The judge admitted the spread sheet in evidence but adjourned the trial thirty days to permit State Farm to inspect Stokes' computer and compare the items on the Stokes spread sheet with State Farm's billing records for the expanded period.

When trial resumed[3] on April 28, 2015, State Farm recalled Tursi and Zazzaro. Zazzaro testified that, as a result of the judge's March 31, 2015 decision, she requested that her claims processor, Carla Salmonson, gather all invoices, explanation of benefits (EOBs), and drafts on the Quick account for the expanded period of November 7, 2011 through September 28, 2012. These were then compared to the Stokes spread sheet and three documents were created: the first contained items listed on

---

[3] After the <u>Rule</u> 104 hearing, the judge converted the hearing and accepted the testimony of Zazzaro and Tursi as trial testimony.

Tursi's spread sheet but never billed to State Farm totaling $130,069.47 (PA-1); a second exhibit listed all items actually billed to State Farm, totaling $291,071.43 (PA-2); and a third listed all payments made by State Farm to Stokes for the expanded period on Tursi's spread sheet totaling $434,833.08 (PA-3).

These documents established that between November 7, 2011 and September 28, 2012, State Farm paid out $434,833.08 on the account, but State Farm never received bills for $130,069.47. When counsel for State Farm attempted to move the exhibits into evidence, the judge sustained Stokes' objection, as Zazzaro did not prepare them. The judge gave State Farm the opportunity to call a witness to authenticate the documents and trial was continued to June 2, 2015.

State Farm proposed calling Patricia Cox-Obeid and Salmonson but Stokes objected to Salmonson as she was not named in discovery and had not been deposed. The judge overruled the objection and permitted counsel for Stokes to meet with Salmonson before she testified.

Cox-Obeid testified she was the State Farm claim representative assigned to the Quick account and, working with Salmonson, gathered the EOBs, medical billings, and proofs of payment from November 2011 through April 2012.

A-5102-14T2

Salmonson explained how she accessed the State Farm electronic claim system, which contains a scanned copy of "every single document that comes into the file," and printed out the documents from the Quick account. Counsel for State Farm then again moved to enter the three exhibits into evidence. Over Stokes' objection they were admitted.

Stokes now argues that the judge erred in allowing Salmonson to testify and in admitting the three exhibits. We find these arguments lack sufficient merit to warrant further discussion in our opinion beyond these brief comments. R. 2:11-3(e)(1)(E).

We generally defer the rulings of our trial court judges as to the admission or exclusion of proffered evidence and will not disturb those rulings absent a clear abuse of discretion. Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 92 (App. Div. 1991). State Farm compiled the three challenged exhibits and was compelled to call Salmonson as a witness to authenticate them, only after Stokes presented a spread sheet through Tursi which exceeded the time frame of the claims made by State Farm and was completely devoid of authentication. There was no way for State Farm to anticipate the Tursi document and we see no reason to disturb the judge's rulings here.

State Farm's cross-appeal raises five points. We find all five lack merit and address only the claim that the trial judge erred in not awarding State Farm all of its claimed amount of $165,465.20.

The trial judge based the award primarily on exhibit PA-1, the list of items not billed to State Farm, which he referred to as a "smoking gun" and his finding that Zazzaro, Cox-Obeid, and Salmonson were credible witnesses. The judge awarded the amount contained in this exhibit, $130,069.47.

Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review: "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (internal quotations omitted). Our task is to "ponder[] whether . . . there is substantial evidence in support of the trial judge's findings and conclusions." Ibid.

Informed by this standard of review, we find no reason to disturb the trial judge's decision.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15                                                        A-5102-14T2